1
2
3
4
5
6           **IN THE UNITED STATES DISTRICT COURT**

7          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

8

9   UNITED STATES,                          CASE NO. CR-F-97-5220 OWW LJO
                                                    CV-F-01-5938 OWW LJO
10                    Plaintiff,
            vs.                              **FINDINGS AND RECOMMENDATIONS ON**
11                                           **DEFENDANT'S MOTION TO VACATE, SET**
                                             **ASIDE OR CORRECT SENTENCE (Doc 319)**
12   THEODORE RICHARD III,

13                    Defendant.
     _____/
14

15          Defendant Theodore Richard, III ("petitioner") is a federal prisoner and on July 28, 2001 filed

16   his motion for relief under 28 U.S.C. §2255 ("section 2255").  Petitioner seeks to vacate, set aside, or

17   correct his sentence of 168 months in custody that was imposed by this Court on February 19, 1999

18   following a jury verdict on November 12, 1998.  A prisoner in custody under the sentence of a federal

19   court who claims the right to be released may move the court to vacate, set aside, or correct the sentence

20   on the grounds that, (1) the sentence violates the Constitution or laws of the United States; (2) the court

21   did not have jurisdiction to impose the sentence; or (3) the sentence was in excess of the maximum

22   authorized by law or is otherwise subject to collateral attack. 28 U.S.C. § 2255.

23                              **Background**

24          On September 4, 1997, the grand jury issued an indictment that Theodore Richard, Sr. (aka

25   Teddy), Theodore Richard, Jr. (aka Mickey)[1] and James Carrington (aka Tyke), conspired and agreed

26   together and with other persons, both known and unknown to the Grand Jury, to distribute and possess

27   _____

28          [1]The evidence clarifies that Theodore Richard, known as Teddy or Ted, is the father of Theodore "Mickey" Richard *III*, the defendant herein. Defendant is erroneously referred to as Theodore Richard *Jr.*

                                            1

1  with the intent to distribute cocaine base and cocaine and phencyclidine (PCP), in violation of 21 U.S.C.

2  §846 and 841(a)(1).[2]  (Doc. 1, Indictment.)

3      Following a jury trial in this action, the jury returned a verdict on November 12, 1998, finding

4  the defendant, Theodore "Mickey" Richard, guilty of one count of conspiracy in violation of 21 U.S.C.

5  §§ 846 and 841(a)(1) and that the conspiracy involved "cocaine base (crack cocaine)."  (Doc. 156, Jury

6  Verdict.)  On February 19, 1998, he was sentenced to 168 months in custody and following his future

7  release, placed on supervised release for 60 months.  (Doc. 238, Sentencing Transcript, p.29.)

8                          **Ineffective Assistance Of Counsel**

9      Petitioner argues that his petition must be granted because his trial counsel and appellate counsel

10  were constitutionally ineffective in the following ways: (1) various errors in failing to object to an

11  alleged variance of the proof at trial from that of the indictment, and related variance issues, (2) failing

12  to investigate the facts of the case, (3) various errors in failing to properly represent him at sentencing,

13  and (4) failing to request a jury instruction on the type and quantity of drugs.[3]

14  **Standard for Ineffective Assistance of Counsel**

15      A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth

16  Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel.

17  *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063 (1984).  The standard for judging

18  any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning

19  of the adversarial process that the trial cannot be relied upon as having produced a just result.  *Id.*

20      In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must

21  consider two factors.  *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 842 (1993); *Strickland*,

22  466 U.S. at 687, 104 S.Ct. at 2064; *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir.), *cert. denied*, 513 U.S.

23  1001 (1994).  First, the petitioner must show that counsel's performance was deficient, which requires

24

25  [2] In a separate indictment, filed in a second case, *U.S. v. Stephan Leon, et al,* CV-F-97-5221, defendant Mickey
   Richard was also charged with conspiring with Stephan Leon, Jeremy Fair, Glen Delouth, and known and unknown others,
26  to distribute and possess with intent to distribute cocaine base and cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1).
   Petitioner claims an alleged merging of the two separate indictments, which forms the basis of his current petition.

27  [3] In his traverse, petitioner withdrew his claim that he was unconstitutionally sentenced based upon *Blakely v.
   Washington,* 542 U.S. 296, 124 S.Ct. 2531 (2004), in light of *United States v. Booker*, -U.S. -, 125 S.Ct. 738 (2005). (Doc.
28  334, Traverse, p.2.)

a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. The petitioner must show that counsel's representation fell below an objective standard of reasonableness. *Id.*, 466 U.S. at 688, 104 S.Ct. at 2064. The petitioner must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. *Id.* 466 U.S. at 690, 104 S.Ct. at 2066; *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995), *cert. denied*, 519 U.S. 848 (1996). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, petitioner must show that counsel's errors were so egregious as to deprive petitioner of a fair trial, one whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. The Court cannot find prejudice simply because the outcome would have been different without counsel's errors. *Lockhart*, 506 U.S. at 369-70, 113 S.Ct. at 842-43. The Court must also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. *Id.*; *Quintero-Barraza*, 78 F.3d at 1345; *United States v. Palomba*, 31 F.3d 1456, 1461 (9th Cir. 1994). To set aside a conviction or sentence solely because the outcome would have been different, but for counsel's error, may grant the petitioner a windfall to which the law does not entitle him. *Lockhart*, 506 U.S. at 369-70, 113 S.Ct. at 842. Thus, if the Court finds that counsel's performance fell below an objective standard of reasonableness, and that but for counsel's unprofessional errors, the result of the proceeding would have been different, the Court must then ask whether, despite the errors and prejudice, the trial was fundamentally fair and reliable.

It is important to note that a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2074. Since it is necessary to prove prejudice, any deficiency that does not result in prejudice must necessarily fail. With this standard in mind, the Court now turns to each of Petitioner's claims of ineffective assistance of counsel.

/////

3

**Petitioner's Claim of a Variance Between of the Indictment and Proof at Trial**

Petitioner argues that counsel's error violated his Fifth Amendment right to be tried only on the charges included in the Grand Jury's indictment. Petitioner argues that the government effectively amended the indictment by expanding the conspiracy.  He argues the government merged the two conspiracies charged against him in the two separate cases, the conspiracy in the instant case, CV-F-97-5220, and the conspiracy in case *U.S. v. Stephan Leon, et al,* CV-F-97-5221.  He argues he was convicted of conspiracy but not with any other co-conspirator who was listed in the indictment in the instant case, CV-F-97-5220, i.e, his father or James Carrington.[4]

**1.      Standard for Proof of a Variance**

A defendant charged in a federal criminal case by a grand jury's indictment may only be tried on the charges set forth in that indictment. *See Stirone v. United States*, 361 U.S. 212, 215-16, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). The Fifth Amendment grants a defendant the right to be tried only on the Grand Jury's indictment. *See United States v. Olson*, 925 F.2d 1170, 1175 (9th Cir.1991). Sometimes divergence of trial proof from an indictment is harmless error; other times such divergence constitutes an amendment that broadens the indictment, requiring per se reversal. *See id.*; *See United States v. Laykin*, 886 F.2d 1534, 1544 (9th Cir.1989) (requiring only that the defendants had adequate notice of the charges against them), *cert. denied*, 496 U.S. 905 (1990); *United States v. Echeverry*, 698 F.2d 375, 377 (9th Cir.1983) (dictum) (conspiracy conviction could be affirmed if the jury agreed upon a conspiracy of some duration even if not the time frame as charged in the indictment).

A variance in proof occurs when the charging terms of the indictment are not challenged, but the evidence offered at trial proves facts materially different from those alleged in the indictment. *U.S. v. Soto*, 1 F.3d 920, 922 (9th Cir. 1993). Reversal is not required, however, unless the defendant shows prejudice thereby.  *Id.*  "An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect by the prosecutor or a court after the grand jury has last passed upon them. A variance, on the other hand, occurs when ... the evidence offered at trial proves

---

[4] The government states that after the conviction and sentence in this instant case, the indictment against petitioner in the other conspiracy case, *U.S. v. Stephan Leon, et al,* CV-F-97-5221, was dismissed on the government's motion.  (Doc. 332, Government's response, p. 5 n.1.)

facts materially different from those alleged in the indictment. The line between a constructive amendment and a variance is at times difficult to draw.... In our efforts to draw this line, we have found constructive amendment of an indictment where (1) there is a complex of facts [presented at trial] distinctly different from those set forth in the charging instrument, or (2) the crime charged [in the indictment] was substantially altered at trial, so that it was impossible to know whether the grand jury would have indicted for the crime actually proved." *See U.S. v. Shipsey*, 363 F.3d 962, 974 (9th Cir. 2004), *cert. denied*, 125 S.Ct. 634 (1004); *Accord U.S. v. Adamson*, 291 F.3d 606, 615 (9th Cir. 2002). "In determining whether there was such a variance, we view the evidence in the light most favorable to the prosecution to see whether any rational juror could have found" the crime charged beyond a reasonable doubt. *United States v. Shabani,* 48 F.3d 401, 403 (9th Cir.1995).

Here, petitioner argues that he was not convicted of conspiracy with any person named in the indictment in the instant case, i.e., his father or James Carrington. He argues that this is an unconstitutional variance because he was found guilty of conspiracy with others and his attorney did not object or otherwise make an appropriate motion.

## 2. Proof of Conspiracy

In general, to prove the crime of conspiracy, the government must prove an agreement to commit an offense, the defendant's knowing participation in the conspiracy with the intent to commit the underlying crime, and at least one overt act in furtherance of the agreement. *U.S. v. Treadwell*, 760 F.2d 327 (D.C. Cir. 1985), *cert. denied*, 474 U.S. 1064 (1986). The agreement itself is the crime, and "it is therefore essential to determine what kind of agreement or understanding existed as to each defendant." *U.S. v. Treadwell,* 760 F.2d at 336. *See United States v. Herrera-Gonzalez*, 263 F.3d 1092, 1095 (9th Cir. 2001) (holding that a given conspirator "need not have known all the conspirators" and that a "connection to the conspiracy may be inferred from circumstantial evidence"), *cert. denied*, 534 U.S. 1117 (2002). The crucial element of a conspiracy under 21 U.S.C. § 846 is that an agreement to violate the drug laws existed. *U.S. v. Levario,* 877 F.2d 1483, 1486 (10th Cir. 1989), *overruled on other grounds by Gozlon-Peretz v. United States*, 498 U.S. 395, 111 S.Ct. 840 (1991). In contrast to some criminal conspiracies, 21 U.S.C. § 846 does not require proof of an overt act in furtherance of the conspiracy. *U.S. v. Levario* 877 F.2d at 1486 n.3.

5

1    The error in petitioner's argument is that he asserts he must be acquitted since he did not conspire

2    with other named co-conspirators in his indictment.  "[T]he conviction of one co-conspirator is valid

3    even when all the other co-conspirators are acquitted." *U.S. v. Hughes Aircraft Co., Inc.*, 20 F.3d 974,

4    978 (9th Cir. 1994) (per curiam), *cert. denied*, 513 U.S. 987 (1994).  Where the only other coconspirator

5    named in the indictment was acquitted, the government was required to prove beyond a reasonable doubt

6    that an unknown coconspirator existed. *U.S. v. Levario*, 877 F.2d at 1486.

7    In the instant case, the indictment stated that petitioner conspired with his father (Ted Richard)

8    and James Carrington.  (Doc. 1, Indictment, p.2.)  Co-conspirator James Carrington pleaded guilty on

9    the charge of conspiracy.  (Doc. 113.)  As to the charge of conspiracy with his father (Ted Richard), the

10   jury was unable to reach a verdict and was hung on the single charge.  (Doc. 157, Doc. 179.)  Later, on

11   June 17, 1999, a jury returned a guilty verdict against Ted Richard.  (Doc. 260.)  Neither of these results

12   with the named co-conspirators results in a variance from the indictment.  *See United States v. Sasser*,

13   974 F.2d 1544, 1559 (10th Cir.1992) ("We agree with the reasoning of both the Ninth Circuit and the

14   District of Columbia Circuit. The failure of the jury to return a verdict on [a defendant's] coconspirators

15   must be viewed as a nonevent that in no way affects [the defendant's] conviction for conspiracy."), *cert.*

16   *denied*, 506 U.S. 1085 (1993).  "[I]f charges are never brought against other alleged coconspirators, if

17   charges are dismissed against all other coconspirators, or if a coconspirator has not yet been tried, the

18   dismissal of charges against the remaining conspirator is not required." *U.S. v. Sachs*, 801 F.2d 839, 845

19   (6th Cir. 1986).  Thus, the results against the other co-conspirators do not require acquittal.

20   Moreover, the Grand Jury indictment also stated that petitioner conspired "with other persons

21   both known and unknown to the Grand Jury . . ."  Thus, the Grand Jury indicted petitioner for the

22   conspiracy with both the indicted co-conspirators and with unindicted co-conspirators.

23   "It is well settled, however, that in situations in which only one conspirator is brought to trial or

24   the conspirators are tried separately, the conviction of the other conspirator may stand." *U.S. v.*

25   *Sangmeister,* 685 F.2d 1124, 1126 -1127 (9th Cir. 1982).  The prosecution may decide to prosecute only

26   one member of the conspiracy, *see Ng Pui Yu v. United States*, 352 F.2d 626, 633 (9th Cir. 1965), or an

27   accused may be found guilty of a conspiracy if there is sufficient evidence of an unnamed unindicted co-

28   conspirator.  *U.S. v. Sangmeister*, 685 F.2d at 1127.  When an indictment alleges that a defendant

conspires with persons both known and unknown to the grand jury, "the government [needs] to show only that [the defendant] conspired with 'someone--anyone.' " *United States v. Pressler*, 256 F.3d 144, 148 (3d Cir. 2001), *cert. denied*, 534 U.S. 1013 (2001). Thus, the government was required to prove only that petitioner conspired with someone--anyone.

The single piece of significant evidence introduced at trial was the wiretapped telephone conversation of June 8, 1997 between petitioner and an unknown person in the Chicago area.[5]  (Doc. 99, Expert Summary.) Petitioner's voice was identified by a police officer at trial. The conversation participants discussed "twelve" units of an unspecified substance. The government's narcotic expert witness testified that the conversation related to twelve ounces of crack cocaine to be sold for $12,000, hence the "12 for 12" reference. The price finally agreed to by the defendant was $10,700, instead of $12,000. Other evidence, by Brock Jamison, corroborated that petitioner sold cocaine base to him on numerous occasions. Thus, this evidence showed that petitioner engaged in a conspiracy to sell drugs *with someone*. *U.S. v. Shabani,* 513 U.S. 10, 11, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994) (Proof of overt act is not required to establish violation of drug conspiracy statute). Here, there was no variance from the indictment and the trial evidence.

Moreover, the introduction of this evidence was not a surprise. In *U.S. v. Lyman*, 592 F.2d 496, 500 -501 (9th Cir. 1978), *cert. denied*, 442 U.S. 931 (1979), the Ninth Circuit held "that in order to constitute grounds for reversal, a variance between proof and indictment must affect the substantial rights of the defendant by preventing him from presenting his defense properly, taking him unfairly by surprise, or exposing him to double jeopardy."

Petitioner had an adequate opportunity to prepare his defense, as shown in particular by the fact that June 8, 1997 conversation was disclosed to him and that the June 8, 1997 conversation would be used against him. Indeed, prior to trial, petitioner's counsel moved to exclude evidence of police officer voice recognition of the tape. (Doc. 69, Order.) Identification of petitioner's voice on the recorded conversation was significant evidence linking him to a drug conspiracy. Moreover, at trial, counsel

---

[5] This wiretapped conversation is also referred to by the parties as the "12 for 12" conversation, and also as the June 7, 1998 conversation. It was admitted into evidence as Exhibit no. 58-930, and during court proceedings, was referred to by the Exhibit number. In this order, the Court will refer to the conversation as the "12 for 12" or "June 8, 1997" conversation.

1    objected to the evidence of the separate indictment and made a motion for mistrial, which was denied.

2    (Doc. 170, Motion for New Trial, p.2:4-9.)  Moreover, Counsel filed a motion for a new trial based, in

3    part, on introduction of evidence of the separate indictment.  (Doc. 170, Motion for New Trial, p.3:14-

4    17.)  Thus, counsel was not deficient in his steps in mitigating the existence of the separate indictment,

5    or attempting to limit the evidence.[6]  Even if there had been a variance, counsel attempted to obtain a

6    new trial based on the evidence introduced from the separate indictment.

7         Petitioner argues that a variance occurred because the testimony as to cocaine base came from

8    the co-conspirators in the other conspiracy case in which he was charged, case number 97-5221 (Doc.

9    319, Habeas Petition, p. 7:16-25.)  Petitioner argues that the proof at trial shows that cocaine base was

10   provided to Brock Jamison and others purchasers by calling Stephan Leon's telephone number.

11        Prior to trial, counsel moved in limine to exclude testimony of the persons charged in other

12   related indictments.  (Doc. 76-78, Motions in Limine.)  At trial, Brock Jamison testified as to his drug

13   transaction(s) with petitioner, but also explained that he had been asked by petitioner to provide

14   chemicals, for which the government charged petitioner for conspiracy in PCP manufacturing.  The jury

15   ultimately did not find  against petitioner on the PCP charge.  However, counsel moved for a new trial

16   based, in part, on the testimony of Brock Jamison.  (Doc. 170, Motion for New Trial.)  Counsel then

17   cleverly used the Brock Jamison testimony at sentencing, as explained *infra*, as the sole "offense of

18   conviction."  Thus, the Brock Jamison testimony could have supported the jury's guilty verdict on the

19   charge of conspiracy for which petitioner was indicted.

20        **3.   Multiple Conspiracy Instruction**

21        Petitioner argues that counsel did not ask for a jury instruction to clarify the conspiracy charged

22   in the other case.

23        A defendant is entitled to a multiple conspiracies instruction only if the defendant's theory of

24   multiple conspiracies is "supported by law and has some foundation in the evidence." *U.S. v. Anguiano*,

25   873 F.2d 1314, 1317 (9th Cir. 1989), *cert denied*, 493 U.S. 969 (1989).  A multiple conspiracies

26

27        [6] Petitioner argues that his appellate counsel did not raise the variance issue.  Appellate counsel cannot be ineffective
     for failing to raise an issue that has no reasonable likelihood of success on appeal. *See Turner v. Calderon*, 281 F.3d 851,
     872 (9th Cir.2002). Petitioner cannot state a viable ineffective assistance claim so far as his appeal is concerned under the
28   facts of this case.

instruction is generally required where the indictment charges several defendants with one overall conspiracy, but the proof at trial indicates that a jury could reasonably conclude that some of the defendants were only involved in separate conspiracies unrelated to the overall conspiracy charged in the indictment. *U.S. v. Anguiano*, 873 F.2d at 1317. Generally, the overall adequacy of the instructions is reviewed in light of the entire charge in the context of the whole trial. *U.S. v. Anguiano*, 873 F.2d at 1317. A multiple conspiracies instruction is generally designed for trials involving multiple defendants engaged in multiple conspiracies. *U.S. v. Anguiano*, 873 F.2d at 1318.

Here, the jury instructions informed the jury of the terms of the indictment and the scope of the conspiracy. (Doc. 158, Jury Instructions, no.2.) The jury instruction also stated:

> "You are here only to determine whether the defendants are guilty or not guilty of the charge of the indictment. Your determination must be made only from the evidence in the case. The defendants are not on trial for any conduct or offense not charged in the indictment. You should consider evidence about the acts, statements, and intentions of others, or evidence about other acts of the defendants, only as they relate to this charge against these defendants." (Doc. 158, Jury Instructions, no 8.)

The instructions specifically told the jury that the "defendants are on trial only for the crime charged in the indictment, not for any other activities." (Doc. 158, Jury Instructions, no.10.) The instructions informed the jury of the elements of "conspiracy" and specifically informed the jury about multiple conspiracies:

> "You must decide whether the conspiracy charged in the indictment existed, and if it did, who at least some of its members were. If you find that the conspiracy charged did not exit, then you must return a not guilty verdict, even though you may find that some other conspiracy existed. Similarly, if you find that any defendant was not a member of the charged conspiracy, then you must find that defendant not guilty, even though that defendant may have been a member of some other conspiracy." (Doc. 158, Jury Instruction no.17.)

The District Court's instruction that the jury could convict only if it found that the defendant was a member of the conspiracy charged, regardless of whether the defendant was part of some other conspiracy, cured any error caused by a variance in proof. See *U.S. v. Olano,* 62 F.3d 1180, 1194 n. 6 (9th cir. 1995) (citing *United States v. Miller,* 771 F.2d 1219, 1240 (9th Cir.1985)).

Thus, the instructions, taken as a whole, adequately addressed the multiple conspiracies and that petitioner's innocence or guilt depended solely upon the instant indictment. Therefore, counsel did not

1    fall below objective reasonableness standards for not asking for additional jury instructions.

2    **Failure to Interview Potential Witnesses and Failure to Use the Testimony at Trial**

3    In presenting a claim of ineffective assistance based on counsel's failure to call witnesses,

4    petitioner must identify the witness, *U.S. v. Murray*, 751 F.2d 1528, 1535 (9th Cir. 1985), *cert. denied*,

5    *Moore v. U.S.*, 474 U.S. 979 (1985), show that the witness was willing to testify, *U.S. v. Harden*, 846

6    F.2d 1229, 1231-32 (9th Cir. 1988), and show that the witness's testimony would have been sufficient

7    to create a reasonable doubt as to guilt.  *Tinsley v. Borg*, 895 F.2d 520, 532 (9th Cir. 1990), *cert. denied*,

8    498 U.S. 1091 (1991); *see also United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1989) (holding that

9    where defendant did not indicate what witness would have testified to and how such testimony would

10   have changed the outcome of the trial, there can be no ineffective assistance of counsel).

11   Here, petitioner argues that defense counsel neither interviewed nor called as witnesses, Vernon

12   Curry, Jackoeib Oliver, Alice Jackson and Marco Richard.  Petitioner contends that he learned of these

13   witnesses following his own private investigator's investigation of the facts.  He claims that these

14   persons would have testified that he was not at the barbeque of June 8, 1997 at which the telephone call

15   to Chicago was placed.

16   Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision

17   that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052. This

18   includes a duty to investigate the defendant's "most important defense," *Sanders v. Ratelle*, 21 F.3d at

19   1457, and a duty adequately to investigate and introduce into evidence records that demonstrate factual

20   innocence, or that raise sufficient doubt on that question to undermine confidence in the verdict. *Hart*

21   *v. Gomez*, 174 F.3d 1067, 1070 (9th Cir.), *cert. denied*, 528 U.S. 92 (1999). However, "the duty to

22   investigate and prepare a defense is not limitless: it does not necessarily require that every conceivable

23   witness be  interviewed." *Hendricks v. Calderon*, 70 F.3d 1032, 1040 (9th Cir.1995), *cert. denied*, 517

24   U.S. 111 (1996) (citations and quotations omitted). "A claim of failure to interview a witness ... cannot

25   establish ineffective assistance when the person's account is otherwise fairly known to defense counsel."

26   *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir.1986) (citations and quotations omitted).

27   Furthermore, "ineffective assistance claims based on a duty to investigate must be considered in light

28   of the strength of the government's case." *Id.*

1   Trial Counsel for Petitioner, as well as the private investigator hired by counsel, submitted a

2   declaration which states in pertinent part that he had questioned petitioner as to possible persons who

3   would support petitioner's contentions in the case.  (Doc. 332, Exh. 6, ¶¶2-3.) Counsel states that

4   petitioner never identified any person who would support his position.  (Doc. 332, Exh. 6 ¶¶2-3.)  He

5   states that petitioner never informed him of a barbeque at the residence of Stephan Leon, where the June

6   8, 1997 telephone call was intercepted. (Doc. 332, Exh. 6, ¶3.) Counsel interviewed Mr. Leon and called

7   him to testify on petitioner's behalf at trial. The private investigator also played the tape recording to

8   several of petitioner's family members in the effort to obtain helpful testimony. He did not find any such

9   testimony.  (Doc. 332, Exh. 7 ¶3.)

10   The reasonableness of counsel's actions may be determined or substantially influenced by the

11   defendant's own statements or actions because counsel's choices are usually based on informed strategic

12   choices made by the defendant and on information supplied by the defendant. When a defendant has

13   given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful,

14   counsel's failure to pursue those investigations may not later be challenged as unreasonable. *Strickland,*

15   466 U.S. at 691, 104 S.Ct. 2052.  Here, counsel performed an investigation of the facts, interviewed

16   witnesses, and relied upon statement of petitioner.  Accordingly, there was not ineffective assistance of

17   counsel in investigating the facts.

18   Petitioner also argues that newspapers reports have reported that Detective Kirkland, the voice

19   identification witness who identified petitioner's voice in the June 8, 1997 conversation, was later

20   suspended for planting evidence.  Petitioner argues that counsel was ineffective for failing to subpoena

21   the employment records for Detective Kirkland and discovering this information.

22   This contention is conclusory. There is no deficient conduct because there is no evidence

23   supporting petitioner's contention. *See Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

24   **Claim of Ineffective Assistance at Sentencing**

25   Petitioner contends that his sentence must be vacated as unconstitutional because it is the result

26   of a misapplication of the Federal Sentencing Guidelines. Specifically, petitioner argues that his counsel:

27   (1) allowed conduct to be considered which was not part of the "offense of conviction" and thus not

28   "relevant conduct," in violation of Guideline 1B1.3, (2) allowed, as part of the base offense level, the

11

court to consider drugs which were part of a second conspiracy and thus not part of the same conspiracy, in violation of Guideline 2D1.1.  These two arguments are intertwined because, in this case, the amount of drugs in the "offense of conviction" determines the "base offense level" in Guideline 2D1.1.

**1.      Defining the Offense of Conviction for "Relevant Conduct"**

Relevant conduct under the Guideline §1B1.3 states;

> "Unless otherwise specified, (I) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:
>
> (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
> > (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,
>
> that *occurred during the commission of the offense of conviction*, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense; . . ."

United States Sentencing Guidelines, § 1B1.3, 18 U.S.C. (Emphasis added.)

Throughout the sentencing, counsel for petitioner and counsel for the government debated what the evidence was that supported the conviction. In effect, they disputed what the "offense of conviction" was.

Petitioner's counsel filed objections to the presentence report prepared by the probation department, which recommended a base offense level of 34.  (Doc. 182, Objections to Presentence Report.)  In the objections, counsel specifically objected that petitioner cannot be sentenced for conduct which was not specifically found by the jury verdict.  He argued that the only evidence which supports any sentencing recommendation is a $40 sale to Brock Jamison, and not the Government's theory on the "12 for 12" conversation.  Counsel argued, therefore, the base level should be base offense level 12. (Doc. 182, Objections to Presentence Report.)  Thereafter, at the sentencing hearing, counsel strenuously argued that the offensive of conviction should be based on the sale to Mr. Jameson and not on the June 8, 1997 conversation:

> "Mr. Jones: The jury's verdict in this case was perfectly consistent with a conclusion only that my client conspired with another to distribute $40 of cocaine base to Brock Jameson. . . (Doc. 214, Sentencing Transcript, 8:16-18.)

Petitioner's counsel further argued that the Court should not accept the offense of conviction based on the June 8, 1997 conversation, involving 12 ounces of cocaine base:

> "I dispute the recommendation by the Probation Office.
>
> "Absent the Court being convinced that my client was a participant in conversation 930 [June 8, 1997 conversation], I think it would be inappropriate to sentence him based on that information.
>
> "The proper level in this case is level 12, which would be 12 to 18 months based on the information provided by Mr. Jameson." (Doc. 214, Sentencing Transcript, p10:7-13.)

Counsel further argued that sentencing should be consistent with a single offense of conviction based on the sale to Brock Jameson:

> "Mr. Jones: It would just seem to me, Your Honor, that ---- although the Court can, and I don't disagree with Mr. Rooney that the Court has the power to consider that evidence in sentencing, when we're dealing with a charge of drug distribution which is purely driven by amount in sentencing, that unless the Court feels very comfortable accepting that evidence as true, then to do otherwise would be an abrogation of the presumption of innocence.
>
> "It is absolutely unclear, and I think it's coming out through the argument of counsel, it's very unclear what the jury finally determined.
>
> "It's certainly as consistent with the verdict that they based their entire verdict on the sale to Brock Jameson as it is on the Government's theory." (Doc. 214, Sentencing Transcript, p.14.)

The government, on the other hand, argued that the offense of conviction was the 12 ounces of cocaine base which was the subject of the "12 for 12" June 8, 1997 conversation.

> "The phone call, that 58-930, is very clear; it was 12 ounces of cocaine base.  It was very clear it was this defendant's voice.  And that is what gives rise to the drug quantity in this case and gave rise to the calculations by the Probation Office."  (Doc. 214, Sentencing Transcript p.11:3-7.)

Thus, the position of petitioner's counsel was the "offense of conviction" was the single sale to Jamison, and that sale should form the base offense level.

The government contrasted the evidence of 12 ounces of cocaine base with that of the evidence

13

1  of Brock Jamison:

2         "I think it's a very conservative estimate, relying on the 12 ounces of
          cocaine base. I think it's absurd to suggest that the only cocaine that this
3         defendant trafficked was one $40 transaction with Brock Jameson, which,
          as the Court will recall, the defendant denied under oath at his trial."
4         (Doc. 214, Sentencing Transcript, p.15:12-17.)

5         After hearing extensive argument over a two day period, the Court stated that the offense of

6  conviction is based on the standard for the amount of the drugs in 2D1.1.

7         "I am going to make the written presentence investigation report my
          written findings except where I find orally to the contrary as I state the
8         sentencing decision.

9         "The offense of conviction which is conspiracy to distribute and possess
          with the intent to distribute cocaine base, is based on - - the amount of
10        drugs that are involved in the offense under 2D1.1."  (Doc. 238,
          Sentencing Transcript, p.25:12-15.)

11

12  The Court then set forth its analysis of the specific amount of drugs in the offense of conviction:

13        "I have analyzed the evidence again, reviewed it minutely with both of
          the parties.  It is the Court's belief that that whatever frailties and
14        whatever difficulties Mr. Jamieson had, the Court is satisfied that he was
          a continuous use of crack cocaine in the '96 to '97 time period that he
15        described, and the Court is well satisfied that he engaged in more than the
          one transaction with Mr. Richard, Mr. Mickey Richards, the defendant.
16
          "The Court is also  - - and I believe that evidence is by more than a
17        preponderance.  I don't have doubt about that evidence."  (Doc. 238,
          Sentencing Transcript, p.25:16-26:1.)
18

19  The Court then turned to the importance of the June 8, 1997 conversation for setting the amount of the

20  drugs at issue:

21        "As to the conversation in tape 930 [the June 8, 1997 conversation], the
          Court is convinced that that is a conversation that negotiates the
22        attempted sale  - - - in other words, the speaker who the government
          contends is Mickey Richard on that tape is obviously talking to the person
23        in Chicago about selling 12 ounces of crack cocaine.  There isn't any
          question in the Court's mind that that's what that is about, and that there
24        is, in effect, a bargaining back and forth between the two individuals
          where the person in Chicago is trying to, I'll just use the vernacular, 'beat
25        down' the price from a thousand dollars an ounce to, at one time, I think
          800 - or $700 an ounce. . . ."  (Doc. 238, Sentencing Transcript, p. 26:6-
26        16.)

27  The Court then based the offense of conviction on the amount of drugs referred to in the June 8, 1997

28  conversation:

14

1
2
3

> "And I believe that the probation officer's analysis and that the government's analysis is correct on that. And I am going to find that there is at least 12 ounces of cocaine base involved in the case that makes the base level a 34." (Doc. 238, Sentencing Transcript, p.27:5-8.)

4   Thus, although defense counsel did not quote the Sentencing Guidelines, he did indeed argue that

5   the defendant should be sentenced based on a lower base offense level. Counsel argued that the only

6   evidence which convicted petitioner is the sale of cocaine base to Brock Jamison for the amount of $40.

7   (Doc. 214, Sentencing Transcript, p.10.) An offense of conviction based on that amount would have a

8   base offense level of 12. Counsel argued that the court should not sentence petitioner based on the June

9   8, 1997 taped telephone conversation. "Absent the Court being convinced that my client was a

10  participant in conversation [on June 8, 1997], I think it would be inappropriate to sentence him based

11  on that information." (Doc. 214, Sentencing Transcript, p.10.) Instead, counsel argued a lower base

12  level was consistent with the evidence and jury verdict: "The proper level in this case is level 12, which

13  would be 12 to 18 months based on the information provided by Mr. Jameson." (Doc. 214, Sentencing

14  Transcript, p.10.) Counsel conduct was not ineffective assistance of counsel. Counsel cleverly argued

15  for a lesser offense of conviction level. Defendant cannot show a reasonable probability that the result

16  of the proceedings would have been different. See *Strickland* at 693-94; *Franklin v. Johnson,* 290 F.3d

17  1223, 1237 (9th Cir.2002). Thus, there is not ineffective assistance of counsel in determining the

18  "relevant conduct."

19      **2.      Clear and convincing standard**

20      Petitioner argues that "clear and convincing" standard should be used when evaluating evidence

21  which increases the offense level. Petitioner argues that counsel did not object adequately, so as to

22  preserve the appeal, of the offense base level and also that the amount of the drugs was not proved. He

23  challenges the base offense level of 34, selected by the Court, rather than 12 base offense level. He

24  argues that the offense level was increased and that counsel argued that the Court may do so on a

25  "preponderance of the evidence" standard.

26      In order to prove sentencing factors contained in the sentencing guidelines, a preponderance of

27  the evidence standard is appropriate unless the sentencing factor has an "extremely disproportionate

28  effect on the sentence relative to the offense of conviction." *United States v. Jordan*, 256 F.3d 922, 927

1   (9th Cir. 2001). *Jordan*, however, does not apply where there is not a sentence enhancement. "*Jordan's*
2   disproportionality analysis arose in the context of a sentence enhancement. We know of no case where
3   this principle has been applied to a discretionary decision to decline special probation and impose a
4   sentence within the guideline range." *U.S. v. Gonzalez*, 365 F.3d 796, 799 (9th Cir. 2004).

5          The distinction in this case, from *Jordan*, is that the Court was not selecting an *increase* in the
6   offense level.  Rather, the court was deciding *what was* the base offense level for which petitioner was
7   convicted.  The Court was not "increasing the offense level" by adopting offense level 34, rather than
8   level 12.  The Court was determining the offense of conviction.  As the Court noted, the jury's verdict
9   did not return a factual finding as to the quantity of the drugs, as it was not required to do so, and thus
10  left the Court and the parties "with a blind verdict."  (Doc. 214, Sentencing Transcript, p.16:5-7.)
11  Therefore, the Court engaged in an analysis, as detailed *supra*, of determining what the offense of
12  conviction was:  The Court decided the offense of conviction was, at least, the 12 ounces of cocaine
13  base.  The 12 ounces of cocaine base formed the base offense level.  Accordingly, the Court need not
14  use clear and convincing evidence because this was not an enhancement.  *U.S. v. James*, 915 F.Supp.
15  1092, 1099 (S.D.Cal. 1995) (This Court does not find it proper to hold that an attorney has provided
16  constitutionally ineffective assistance for not making an objection at sentencing for which there is no
17  factual basis and which is based on a highly unlikely premise.) Regardless, even if clear and convincing
18  were appropriate, there was no ineffective assistance of counsel because the Court stated it was
19  "convinced" of the evidence of the amount of drugs in the June 8, 1997 conversation.

20         Petitioner argues that Court should have used the Guideline range for cocaine hydrochloride,
21  rather than "crack cocaine."  (Doc. 319, Habeas Petition, p. 24.)

22         No evidence is cited to support petitioner's argument.  Indeed, the jury returned special findings
23  in which it found that defendant engaged in a conspiracy for possession of "cocaine base (crack
24  cocaine)." (Doc. 156, Verdict.)  There was evidence that the June 8, 1997 conversation involved cocaine
25  base or crack  (Doc. 214, Sentencing Transcript, p.17:7-11.)  *See U.S. v. Shaw*, 936 F.2d 412, 416 (9th
26  Cir. 1991) ("we conclude that Congress and the Commission must have intended the term "cocaine base"
27  to include "crack," or "rock cocaine," which we understand to mean cocaine that can be smoked, unlike
28  cocaine hydrochloride.") Thus, counsel's failure to object to the use of crack cocaine or cocaine base in

1    sentencing is not ineffective assistance of counsel.

2    **Jury Instruction on Type and Quantity of Drugs**

3        Petitioner argues that counsel was ineffective in not asking for a jury instruction on the amount

4    and type of drugs.  More specifically, petitioner argues that the jury was confused as to the difference

5    among cocaine, cocaine base and crack and his counsel should have asked for a jury instruction.

6        Petitioner argues that the jury could have found him guilty of cocaine powder, but does not point

7    to evidence in the record.  There was sufficient evidence that the jury could have convicted petitioner

8    of cocaine base (crack cocaine).  *See U.S. v. Skyrock*, 342 F.3d 948, 984 (9th Cir. 2003) (There is

9    sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the

10   prosecution, any rational trier of fact could have found the essential elements of the crime beyond a

11   reasonable doubt.), *cert. denied*, 541 U.S. 965 (2004).  While the jury sent a note indicating it was

12   confused by the difference between cocaine and cocaine base, the Court indicated its intention to tell the

13   jury that the evidence had been presented during trial and that it was the jury's duty to remember the

14   evidence:

15           "The Court: My response to the question about the difference between
             cocaine and cocaine is that they heard testimony about the substance
16           referred to as cocaine base or crack.  It is described by at least one of the
             witnesses, and as to why there is a difference, I do not, other than the fact
17           that it's different in its physical form, I don't recollect any testimony on
             why there is a difference.
18
19           "Certainly that matter of punishment is one that the jury cannot consider
             and so my proposed answer to this question would be you heard
             testimony about that and it is up to you to recall what that testimony was
20           concerning these substances.

21           "Does anybody have a difference  - -

22           "Mr. Lewis:    That's fine.

23           "Mr. Rooney:  That' agreeable

24           "The Court:    Mr. Jones?

25           "Mr. Jones:    That's fine, you Honor."  (Doc188, Trial proceedings, p.931-932.)

26   It was not unreasonable for counsel to rely on the jury's memory as to evidence which was produced at

27   trial or to not draw intention to the evidence.  Moreover, there is evidence to support the conviction

28   based on the special finding of "cocaine base (crack cocaine)."  The "prejudice" prong of Strickland is

satisfied only where the defective performance of counsel results in an "unreliable" or "fundamentally unfair" result. Thus, there is not prejudice.

### Conclusion

For the reasons stated above, this Court RECOMMENDS that petitioner's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. section 2255 be HEREBY DENIED.

This report and recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)( c). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    November 8, 2005**                    **/s/ Lawrence J. O'Neill**
b9ed48                                                          UNITED STATES MAGISTRATE JUDGE